ANDRES and wife *against* KOPPENHEAFER.

*Lancaster.*

3sr 255
141 323

IN ERROR.

*Saturday,
May 31.*

ERROR to the Common Pleas of *Lebanon* county, in an action against the defendant, *Henry Koppenheafer*, for slander of the plaintiff's wife, *Susanna*, in which the Court below arrested the judgment, after a verdict for the plaintiff. The slanderous words alleged in the declaration to have been uttered by the defendant, were in German, meaning in English, as follows, " what is a woman that makes a libel? She " is a dirty creature, and that is you, (meaning the said *Su-* " *sanna*,) you, (the said *Susanna* still meaning,) have made " a libel; and I, (the said *Henry* meaning,) will prove it " with my whole estate."

*Weidman* and *Rogers*, for the plaintiffs, contended, that the words were actionable. All words are actionable which import a charge of crime. 6 *Bac. Ab.* 205. Making a libel, means in common understanding, publishing it. But even if it does not, yet making a libel is alone a crime without publishing it. *M'Nally on Ev.* 642. *Carth.* 409, 410. 1 *Vent.* 31. 1 *Lord Ray.* 413. Libelling, is punishable with fine and imprisonment here, and with the pillory in *England.* They also cited 4 *Bac. Ab.* 449. 5 *Binn.* 218.

*Godwin,* contra. In order to make words slanderous, they

*The words
" what is a wo-
man that
makes a libel?
she is a dirty
creature, and
that is you.
You have
made a libel;
and I will
prove it with
my whole
estate," are
actionable.
To make
words actiona-
ble, it seems
there should
be some thing
of an infamous
or disgraceful
nature; either
a felony, or
a misdemean-
or which af-
fects ones
reputation.*

1817.

ANDRES
and wife
*v.*
KOPPEN-
HEAFER.

must import an offence that makes a person infamous ; which the making of a libel does not:    It is like an assault and battery ; no disgrace is attached to it.    Besides, merely making a libel is no offence.    Until publication, a man's papers are his own property.  *M'Nally*, 643.  11 *St. Tri.* 321.    Having a copy of a libel in a man's chamber is no offence unless he publishes it, or conversed about it.  2 *Keb.* 502.  The declaration ought to state a charge of publication ; otherwise it is not actionable.  2 *Bl. Rep.* 1037.  By the constitution of *Pennsylvania*, art. 9, sect. 8, the people are secured from unreasonable searches or seizures. He also cited, 4 *Tucker's Black.* 150. 1 *Caines'* 581.

TILGHMAN C. J.  The question in this case is, whether the words laid in the declaration are actionable ?  " What is a " woman that makes a libel ?  She is a dirty creature, and " that is you.  You have made a libel, and I will prove it " with my whole estate."

.The defendant contends, in the first place, that he only said that Mrs. *Andres made* a libel, which is not actionable, because *making* a libel is not indictable, unless it be *published* also.   Many cases were cited to prove that publication was necessary to support an indictment, and some to the contrary.   But, that is not the point to be decided.   Granting that publication is necessary, yet when one is charged with *making* a libel, especially, accompanied with the other opprobrious words used in the present instance, it may be fairly understood, such a *making*, as constitutes *a complete indictable offence*.   In common parlance, making includes publishing, and words are to be taken according to common understanding.   I do not think, therefore, that this objection will avail the defendant.   But, supposing the words to imply an indictable offence, it is contended, that still they are not actionable, because there is nothing *infamous* in the crime of libelling.   It is laid down by some elementary authors, that all words are actionable, which import an offence for which one is indictable and punishable by fine and imprisonment.  I incline to think, that this is carrying the matter rather too far.   To say that a man has committed an *assault* and *battery*, is charging him with an offence punishable by fine and imprisonment.   But yet, no action of slander has been sustained for such words.   It seems, that there should be something

in the offence, of an infamous or disgraceful nature.  Either
a felony, or a misdemeanour which affects one's reputation.
In *Shaeffer* v. *Kintzer*, 1 *Binn.* 542. and *Ross* v. *M'Clurg*,
5 *Binn.* 218, it appears to have been the opinion of this
Court, that the words should contain an imputation of some
crime liable to capital or infamous punishment, or some mis-
demeanor of an infamous nature.  This was the rule laid
down by Ch. J. De Grey, in *Onslow* v. *Horne*.  Now, will a
libel come within this rule?  I think it will.  The punish-
ment at common law, was infamous or otherwise, at the dis-
cretion of the Court.  It was sometimes punished with fine,
or imprisonment, or both, and sometimes with the pillory.
But what is its estimation in society?  It is an offence which
admits of many grades.  Viewing it in its most favourable
light, it indicates an unfeeling, malicious heart.  But when
it rises to the higher degrees, it is infamous in the extreme.
The man who wantonly, maliciously, and falsely, traduces
the character of his neighbour, is no better than a felon ; he
endeavours to rob him of that, in comparison with which,
gold and diamonds are but as dross.  The charge in this
case was general.  But it was attended with other abusive
expressions, from which it may be inferred, that an infamous
libel was intended.  I do not think, however, that it is the
duty of the Court, to be solicitous to soften the meaning of
expressions, which the jury have found to be slanderous.
As the words convey an express imputation of a libel, and a
libel is an offence punishable with fine and imprisonment,
and in its nature always immoral and often infamous, I am
of opinion, that the declaration shews a good cause of action.
The judgment of the Court of Common Pleas should, there-
fore, be reversed, and judgment entered for the plaintiff.

Gibson J. 1. Whatever may formerly, have been the rule
the law is now settled, that in actions of slander, the words
are to be understood in the popular sense.  It is too late, to
call on a Court to tax its ingenuity to find out some sense in
which the words might have been spoken innocently ; that
absurdity is exploded.  It is not necessary to decide, whe-
ther the bare making of a libel without publishing it, be cri-
minal or not.  In common parlance, to charge a person with
making a libel, is a charge of libelling.  Would not every
body understand a person saying, that " A, made a libel on

ANDRES
and wife
*v.*
KOPPEN-
HEAFER.

". B," as charging A, with consummating the offence? And would not this interpretation gain additional strength, from considering the words as a literal translation from the German language? The case of *Bornman* v. *Boyer*, 3 *Binn.* 515, is much stronger than the present, and proves, that an accusation made even *indirectly*, and insinuated by equivocal expressions, is sufficient to support an action of slander, if from the words employed, it would be understood by mankind in general, that a charge was intended to be conveyed.

. 2. But, is it actionable to charge a person with having libelled? In *England* the law is broadly laid down, that words charging an offence, that would subject the party to punishment by indictment, are actionable in themselves.· In *Brooker* v. *Coffin*, 5 *Johns.* 188, the rule is restrained to a charge, that would, if true, subject the party to an indictment for a crime involving *moral turpitude*, or that would draw after it an *infamous punishment*. This distinction appears to me a sound one, and to be founded in reason and good sense. There is a variety of misdemeanors, to the commission of which, not even the shadow of disgrace is attached by the world, and to be accused of which, would not be likely to induce the vexation of a prosecution, if the accused were innocent, and if guilty, he ought not complain. I think it unreasonable, that a charge of having committed a nuisance, assault, and battery, and the like, should be held actionable. Then testing the case by this rule, it appears to me, the words *laid in the declaration* are actionable; for, however complacently the world may be disposed to look upon the commission of this offence, (and I confess it is generally viewed with too much lenity,) it cannot be denied to be, in point of morality, a crime of an atrocious character. There may be, and no doubt are, men who consider it their vocation to libel without the least regard to truth, the private character of every individual whose situation renders it expedient to do so, for the purpose of carrying a point, and who are not thought the worse for it in the circle of their acquaintance. But this is rather an evidence of perversion of the public judgment, than of the absence of turpitude in the perpetrators of the offence. But there may be instances of this crime, where the peace of families, and the reputation of females are assailed, which,

involve a degree of moral turpitude, that render it as dishonourable as theft. There may be also cases in which the degree of guilt, and consequently, of disgrace, is comparatively small; but the rule being general must equally apply to all cases. It, therefore, appears to me, the words laid are actionable, and that the Court below erred in arresting the judgment.

DUNCAN J. The judgment was arrested by the Common Pleas on the ground, that the words laid in the declaration are not actionable. " What is a woman that makes a libel? " She is a dirty creature, and that is you. You have made " a libel, and I will prove it with my whole estate."

It is to be considered, whether this is a charge imputing to the plaintiff the crime of perfecting a libel. It is said, by the counsel for the defendant in error, that publication is the offence, and that as no publication is alleged, no crime was imputed. It is a sufficient answer to this to say, that the very charge shews it must have been published. It must have been known to the defendant and to others.. " I " will prove it with my whole estate." In some way, if it was true that she made a libel, it must have been published. How could he know it; how could he prove it, unless it had been communicated? Here then it must have been made public. If the work has been made *public*, the maker, repeater, writer, or publisher of the libel, is subject to punishment by indictment. But this was not an indictment for the libel. To constitute the slander, it is not necessary that the imputation should convey the charge in strictly technical language.

After a verdict, Judges are not to set their wits at work, to find out some possible way in which the words might have been innocently spoken. If that were in truth the case, the defendants might shew it in evidence to the jury. *Peake* v. *Oldham, Cowp.* 278. The extent to which the rule of construing words *in mitiori sensu* was formerly carried, appears to be truly ridiculous. " You have poisoned your husband." " Sir *Thomas Holt* struck his cook on the head with a cleaver, " and cleaved his head; the one part lay on one shoulder, and " the other on the other." In both cases, held not actionable. For though she poisoned her husband, he might not have died. Though he cleaved the cook's head into two

parts, the wound, might not have been mortal. But this mode of construction has been long since exploded, and the rule of common sense established. In 2 *Ld. Ray.* 959, Lord HOLT observes, " It is not worth while to be very learned " as to this point ; for wherever words tend to slander a man " and take away his reputation, I shall be for supporting " them for the preservation of the peace." In *Rue* v. *Mitchell*, 2 *Dall.* 58, President SHIPPEN has laid down the correct rule. The sense in which words are received by the world, is the sense which courts of justice ought to ascribe to them, on the trial of actions for slander. Slander imports an injury, and the injury arises from the slanderous manner in which the language is understood. So in *Brown* v. *Lamberton*, 2 *Binn.* 34, the rule of law is stated to be that words shall be taken according to their natural import. Make a libel, is a charge of every thing necessary to constitute the offence of libel. To say of an unmarried woman, you made a child, after a finding by a jury fixing the meaning of the words, it would be idle to say, that this. was not actionable ; as it might be possible the young lady might have only made a doll, and had not been the mother of a real child of flesh and blood. It is manifest, that the design of the speaker was to injure the person to whom this related. But is it actionable to say of another, that he made and published a libel? The offence of libelling is considered as a most atrocious one, affecting the moral character of the libeller ; a moral turpitude. It is an offence attributing disgrace. A libeller is considered as an assassin. I allude not to publications on affairs of government ; to the proper liberty of the press secured by the constitution ; but to calumnies affecting the reputation of individuals, and the peace of families.

Some libels would be so infamous, as to exclude the author from all society. Others might not be of the same malignant stamp. The words here could not be innocently spoken ; the jury were the judges of this. After verdict, the conclusion of law is, that they were maliciously spoken ; and if under any circumstances the words so spoken may be actionable, the judgment will not be arrested. 6 *Johns.* 83. In *Turner* v. *Ogden*, 2 *Salk.* 696, Lord HOLT lays down the rule, that to render the words actionable, imprisonment not only must be the punishment, but the punishment must be infamous. In *England* the punishment of

gross libels, is the pillory; the crime then at common law is infamous. This punishment is not inflicted in this state; though that does not take away the infamy of the offence. But this rule of Lord HOLT does not prevail in *Pennsylvania*. To call a woman whore is actionable, without special damages. It is so, because the crime of fornication is indictable. To call a married woman an adultress is actionable, because indictable; and yet the punishment is not infamous; it is imprisonment. But it is indictable, and attaches impurity and depravity. In the case of *Onslow* v. *Horne*, 3 *Wils*. 186, this rule of Lord HOLT is not approved of; and DE GREY Ch. J. says, " I think HOLT carried it too far, as to " precision, for it is laid down in *Finch's Law*, 185, if a man " maliciously utters any false slander to endangering one in " law, as to say he hath reported that money is fallen; for " he shall be punished for such report." Here is the case of a crime, and the punishment is not infamous, and yet action, it would seem, would lie for those words, according to the opinion of *Finch*. 1 *Com. Dig*. (*Action on the case for defamation*, 20,) considers the criterion to be, whether the crime is indictable or not. In *Brooker* v. *Coffin*, 5 *Johns*. 191, a rule is laid down with some precision. It is this:—In case the charge, if true, would subject the party charged to an indictment for a crime involving moral turpitude, or subject him to an infamous punishment, the words will be actionable. The reasons in this case, are recognised by this Court, in *Shaeffer* v. *Kintzer*, 1 *Binn*. 542, and *M'Clurg* v. *Ross*, 5 *Binn*. 218. Mr. Justice YEATES in that case, intimates, that to make words actionable they must convey a charge of moral turpitude and depravity, and render the party liable to punishment. No one can read these words without feeling the sense in which they intended by the speaker. The Court must understand them as all mankind would understand them, and Judges cannot understand them differently in Court, from what all mankind would do out of Court. What else could the defendant *mean*, than the commission of such an act as would make the plaintiff a dirty creature, and tend to exclude her from society?

Every charge imputing an offence, which would subject the party to indictment and imprisonment, is not actionable; as assault and battery, forcible entry and detainer. But if it subjects the party to indictment, and punishment by impri-

1817.

ANDRUS
and wife
v.
KOPPEN-
HEAFER.

sonment, and attaches a moral turpitude, as adultery, this is actionable. As these words,. from their whole frame, cannot be considered as innocently uttered, if under any circumstances they would be actionable, and as I am of opinion, under some circumstances they might be actionable, after verdict, I. am for sustaining the action, reversing the judgment of the Court of Common Pleas, and rendering judgment for the plaintiff.

Judgment for the plaintiff.