805 F.2d 110
 45 Fair Empl.Prac.Cas. 849,
42 Empl. Prac. Dec. P 36,835,
2 Indiv.Empl.Rts.Cas. 1346
Joyce BRADSHAW, Individually and as Administratrix of the
Estate of Lee Bradshaw
v.
GENERAL MOTORS CORPORATION, FISHER BODY DIVISION.
Appeal of Joyce BRADSHAW.
 No. 86-3179.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 30, 1986.
Decided Nov. 12, 1986.
 
 Lindsley W. Love (argued), Robert O. Lampl, James A. Ashton, Pittsburgh, Pa., for appellant.
 Leonard L. Scheinholtz, Patrick W. Ritchey (argued), Steven P. Fulton, Reed Smith Shaw & McClay, Pittsburgh, Pa., for appellee.
 Before WEIS, MANSMANN and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 The plaintiff's state court suit arising out of alleged employment discrimination contained counts under 42 U.S.C. Sec. 1981 and Title VII of the Civil Rights Act of 1964, as well as state tort claims. After removal to federal court, the district judge dismissed the Sec. 1981 and Title VII counts because of a statute of limitations bar and found that the complaint failed to state a cause of action in tort. We will reverse the judgment on the Sec. 1981 claim because the statute of limitations had not run. We will dismiss the Title VII count for lack of jurisdiction and affirm the dismissal of the state tort count.
 
 
 2
 The plaintiff's husband, decedent Lee Bradshaw, was employed by defendant at its Fisher body plant in West Mifflin, near Pittsburgh, Pennsylvania. He began work in 1969, and in 1975 developed an alcohol and drug abuse problem that worsened and eventually disrupted his work performance. After he began treatment, Bradshaw's condition became general knowledge at the plant. On August 19, 1982, he was discharged from his position, allegedly for chronic absenteeism.
 
 
 3
 Three months later Bradshaw filed a charge with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission, contending that he was discharged because he was black. On May 16, 1984, the EEOC wrote that it did not find reasonable cause to support the charge and issued a right to sue letter advising him that he had ninety days in which to bring suit in the district court.
 
 
 4
 Soon after his discharge, Bradshaw also filed a complaint with his union. On May 14, 1984, the grievance was withdrawn without prejudice in accordance with a settlement reached by the company and the union. The company agreed that it would consider a Local Employee Assistance Committee recommendation to rehire Bradshaw--if one were ever made. However, the agreement specifically did not obligate the company to reemploy him.
 
 
 5
 Bradshaw was never rehired, and he died in December, 1984. In her capacity as administratrix and as surviving spouse, his widow brought suit in the Court of Common Pleas of Allegheny County on October 2, 1985. Defendant then removed the case to the district court.
 
 
 6
 Count I of the complaint alleged that the company had discharged Bradshaw because he was black, a violation of 42 U.S.C. Sec. 1981. The district court held that because the complaint had been filed more than two years after the incident, the statute of limitations barred the suit.
 
 
 7
 Count II alleged a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2(a). Because the suit was not filed until more than one year after receipt of the right to sue letter, the court dismissed that count as well.
 
 
 8
 Count III charged defendant with a state tort, intentional infliction of emotional distress by misleading Bradshaw about the chances of being rehired.
 
 
 9
 Count IV asserted that the defendant's actions were fraudulent and led Bradshaw to believe that he would be reemployed if he rehabilitated himself. On this ground plaintiff asked for punitive damages.
 
 
 10
 The district court concluded that plaintiff had failed to state a claim for intentional infliction of emotional distress. Moreover, those allegations were inextricably intertwined with the settlement of the grievance by the union; thus, section 301 of the Labor Management Relations Act preempted the state tort claims. 29 U.S.C. Sec. 185.
 
 
 11
 On appeal plaintiff challenges the rulings of the district court on each count.[1]
 
 COUNT I
 SECTION 1981 CLAIM
 
 12
 In ruling that the statute of limitations barred this count, the district court understandably relied on our holding in Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir.1985), that the statute of limitations for Sec. 1981 cases is two years. There we applied that period retroactively to bar claims contained in the suit filed in 1973.
 
 
 13
 After the district court docketed its order in this case, however, we filed our opinion in Al-Khazraji v. St. Francis College, 784 F.2d 505 (3d Cir.), cert. granted, --- U.S. ----, 107 S.Ct. 62, 93 L.Ed.2d 21 (1986). We held there that "at least as to persons whose causes of action arose after 1977, Goodman should not be applied retroactively to alter the applicable Pennsylvania statute of limitations from six to two years." Id. at 514.
 
 
 14
 Defendant here argues that the holding is inconsistent with Goodman and other cases in which we applied the Sec. 1983 statute of limitations retroactively. See Fitzgerald v. Larson, 769 F.2d 160 (3d Cir.1985); Smith v. City of Pittsburgh, 764 F.2d 188 (3d Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985). The contentions defendant presents here were discussed in Al-Khazraji, and we are bound by that decision. Third Circuit IOP 8(c). Consequently, in the case at hand the statute of limitations for the Sec. 1981 count was six years, and the dismissal of Count I will be vacated.
 
 COUNT II
 THE TITLE VII CLAIM
 
 15
 Count II presents a jurisdictional issue. Although the parties did not raise or brief the question, we inquired into the matter at oral argument. We may not overlook a jurisdictional defect even if it was not brought to the attention of the district court.
 
 
 16
 Title VII of the Civil Rights Act of 1964 vests exclusive jurisdiction in the federal courts, 42 U.S.C. Sec. 2000e-5(f)(3). The state court where plaintiff originally filed, therefore, was without jurisdiction over this count, and the filing of the claim in that court was a nullity. The question then becomes whether the removal to federal court infused vitality into this lifeless count.
 
 
 17
 Long-standing authority holds that a removed case may not be adjudicated in a federal court if the state court did not have subject matter jurisdiction over the suit when it was initially filed there. As the Supreme Court explained in Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co., 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922), jurisdiction of the federal court on removal is derivative. "If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." Consequently, if the Title VII claim here were the only one asserted in the state court, clearly the case would have to be dismissed by the district court. See Witherow v. Firestone Tire & Rubber Co., 530 F.2d 160, (3d Cir.1976); Gleason v. United States, 458 F.2d 171 (3d Cir.1972). See also 14A C. Wright, A. Miller, and E. Cooper, Federal Practice and Procedure Sec. 3721 (1985).[2]
 
 
 18
 The question here is more complex because the complaint also contains a claim under Sec. 1981. Federal and state courts have concurrent jurisdiction over such claims, and they are therefore removable. In addition, it appears that there is diversity of citizenship between the parties, and thus the state tort claims also come within the removal statute.
 
 
 19
 The case, as a whole, therefore may be removed to the district court. That alone, however, does not establish that the Title VII count can survive in the federal court.
 
 
 20
 In General Investment Co. v. Lake Shore & Michigan Southern Ry. Co., 260 U.S. 261, 286-88, 43 S.Ct. 106, 116-17, 67 L.Ed. 244 (1922), the plaintiff's suit in state court included state claims, federal questions arising under the United States Constitution, and counts alleging violations of the Clayton and Sherman Antitrust Acts. The Supreme Court held that the district court properly dismissed the antitrust counts because the state court had no jurisdiction over those claims. As the Court said, "[w]hen a cause is removed from a state court into a federal court the latter takes it as it stood in the former. A want of jurisdiction in the state court is not cured by the removal, but may be asserted after it is consummated." Id. at 288, 43 S.Ct. at 117.
 
 
 21
 A similar result was reached in Pueblo Int'l, Inc. v. De Cardona, 725 F.2d 823 (1st Cir.1984). There the plaintiff's complaint advanced claims of unconstitutionality, but also alleged violations of the antitrust laws. The court of appeals concluded that although the antitrust counts were correctly removed as pendent to the constitutional claims, the district court was then required to dismiss for lack of jurisdiction. See also Dyer v. Greif Bros., Inc., 766 F.2d 398 (9th Cir.1985) (District court does not acquire jurisdiction by removal over Title VII case filed improperly in state court).
 
 
 22
 In the case at hand, although the district court had jurisdiction over the Sec. 1981 and the state claims, it had no jurisdiction over the Title VII count because the Court of Common Pleas had none. That claim, therefore, must be dismissed for want of jurisdiction.[3]
 
 
 23
 Because the district court lacked jurisdiction, we conclude that Count II of the complaint, the asserted cause of action under Title VII, must be dismissed.
 
 COUNTS III AND IV
 THE STATE TORT CLAIMS
 
 24
 The district court and plaintiff on appeal have treated the state tort claims as one, and we shall do so as well. Essentially, plaintiff charges that the company's action "in continually and intentionally misleading Bradshaw as to the chances for being rehired" caused him compensable emotional distress.
 
 
 25
 The complaint alleges that "the Defendant's representatives and agents knowingly and falsely misrepresented to Bradshaw that he had to rehabilitate himself without the Defendant's help and that once he did rehabilitate himself that he would be rehired." Plaintiff argues that in fact an alcoholic rehabilitation program for which decedent was eligible had been established jointly by the union and the company.
 
 
 26
 Plaintiff also asserts that Bradshaw did well in the rehabilitation program in which he enrolled at his own expense. Nevertheless, he was not rehired despite the defendant's promises to reemploy him if he progressed in the program.
 
 
 27
 We reviewed the Pennsylvania requirements for the tort of intentional infliction of emotional distress in Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1274 (3d Cir.1979). Assuming that the Pennsylvania courts would adopt the factors set out in Sec. 46 of the Restatement (Second) of Torts, we said that the challenged conduct must:
 
 
 28
 (1) be extreme and outrageous,
 
 
 29
 (2) be intentional or reckless, and
 
 
 30
 (3) cause severe emotional distress.
 
 
 31
 Id. at 1274-76.
 
 
 32
 Pennsylvania has placed substantial restrictions on this cause of action. In Papieves v. Kelly, 437 Pa. 373, 263 A.2d 118 (1970), the Pennsylvania Supreme Court encountered a bizarre and gruesome situation that met the standards of the Restatement. The defendants in that case had struck the plaintiffs' minor son with an automobile and killed him. Without notifying the authorities or the parents, the defendants secretly buried the body, which was not discovered for two months. Even in that case, the court was careful to limit its holding, observing that "extension of legal liability to acts which cause emotional distress is not without its problems." Id. at 378, 263 A.2d at 121.
 
 
 33
 The Pennsylvania Superior Court has been similarly cautious. In Jones v. Nissenbaum, Rudolph & Seidner, 244 Pa.Super. 377, 368 A.2d 770 (1976), the Court quoted the Restatement (Second) of Torts comment d, that the challenged conduct must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " Id. at 383, 368 A.2d at 773. In short, a recitation of the facts would incite an average member of the community "to exclaim 'Outrageous.' " Id.
 
 
 34
 Overreaching, but not abusive, tactics used in the course of everyday living will not support a claim for intentional infliction. Threats of foreclosure by a law firm where such action was of doubtful legality did not meet the test in Jones, nor did the unauthorized disclosure of telephone numbers in Nagy v. Bell Telephone Co. of Pennsylvania, 292 Pa.Super. 24, 436 A.2d 701 (1981).
 
 
 35
 Where some special relationship exists, the test has been more relaxed. See Bartanus v. Lis, 332 Pa.Super. 48, 480 A.2d 1178 (1984) (malicious interference with father-son relationship); Fair v. Negley, 257 Pa.Super. 50, 390 A.2d 240 (1978) (plurality opinion); Beasley v. Freedman, 256 Pa.Super. 208, 389 A.2d 1087 (1978) (both landlord-tenant cases where abusive and unreasonable conduct alleged).
 
 
 36
 In Banyas v. Lower Bucks Hospital, 293 Pa.Super. 122, 437 A.2d 1236 (1981), a cause of action was stated when the defendant hospital's employees and physicians intentionally prepared inaccurate records charging the plaintiff with causing the death of a third party. As a result of the defendants' wrongful conduct, the plaintiff was indicted on homicide charges.
 
 
 37
 We had occasion to discuss this tort in Wisniewski v. Johns-Manville Corp., 759 F.2d 271 (3d Cir.1985). The majority confessed to "nagging uncertainty" and conceded that the "claim is extremely close," but found enough in the plaintiff's complaint to withstand a Fed.R.Civ.P. 12(b)(6) motion. Id. at 275, 277. We emphasized, however, that the conduct " 'must be of an extreme and outrageous type.' " Id. at 276 (quoting Jones, 244 Pa.Super. at 383, 368 A.2d at 773).
 
 
 38
 Opinions of the federal district courts in Pennsylvania have displayed an equally demanding standard in their assessment of facts asserted to establish liability for the tort. The plaintiff's allegations of discriminatory discharge in Hooten v. Pennsylvania College of Optometry, 601 F.Supp. 1151 (E.D.Pa.1984), were not adequate to establish tort liability until "the conduct complained of crossed the threshold of decency into a realm of atrocity ... utterly intolerable in a civilized society." Id. at 1155. In two cases growing out of employment terminations, the courts concluded that the alleged harassing and fraudulent conduct of the employers failed to state claims. See Cautilli v. GAF Corp., 531 F.Supp. 71, 74 (E.D.Pa.1982) (Becker, J.); Beidler v. W.R. Grace, Inc., 461 F.Supp. 1013, 1016 (E.D.Pa.1978), aff'd, 609 F.2d 500 (3d Cir.1979).
 
 
 39
 The contrast between this case and those in which the courts have found a cause of action to be stated is marked. The conduct alleged here, even if considered abusive, does not approach the level of the unjustified threats in Jones or the extreme circumstances in Papieves and Banyas. Nor do we find that the employer-employee status is a special relationship similar to that of landlord-tenant or parent-child, that would justify relaxation of the Restatement standards.
 
 
 40
 We conclude that plaintiff has failed to state a cause of action for intentional infliction of emotional distress under state law. Therefore, we need not reach the alternate ground relied on by the district court--that because of the settlement of his grievance by the union and company, the Labor Management Relations Act preempted the state tort claim. See Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, 647 F.2d 372 (3d Cir.1981), cert. denied, 454 U.S. 1143, 102 S.Ct 1003, 71 L.Ed.2d 295 (1982).
 
 
 41
 Accordingly, we conclude that the dismissal of Count I must be vacated and the case remanded for further proceedings. On all other Counts, the judgment of the district court will be affirmed.
 
 
 
 [1]
 Although the granting of a motion to dismiss is not necessarily an appealable final order, see Borelli v. City of Reading, 532 F.2d 950 (3d Cir.1976), plaintiff has informed the court that she intends to stand on the allegations of the present complaint. Thus, the dismissal order is final and appealable. Id. at 951-52
 
 
 [2]
 Although this somewhat anomalous and frequently criticized rule has been abrogated by a recent amendment to the removal statute, 28 U.S.C. Sec. 1441(e), that amendment applies only to cases filed in state courts after June 19, 1986. The plaintiff's complaint here was filed in October, 1985, and thus does not come within the scope of the amendment
 
 
 [3]
 Even if there had been jurisdiction, it is unlikely that the claim could have survived in any event. Plaintiff argues that defendant misrepresented to the decedent the likelihood of his reemployment and that those statements tolled the running of the ninety-day limitations period. Even assuming the validity of the plaintiff's tolling contention, a highly questionable proposition here, the limitations bar would not be removed. The right to sue letter was issued in May, 1984, and the defendant's actions could only have tolled the statute until Bradshaw's death in December, 1984. The complaint was not filed until October, 1985, and plaintiff offers no grounds for tolling the statute during any part of the ten-month period after her husband's death